SO ORDERED.
SIGNED July 20, 2020.



_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| In re: | Case No. 19-20617 |
| Randy Joseph Hanks<br>Kristi Marie Hanks | Chapter 7 |
| *Debtor* | Judge John W. Kolwe |

**RULING ON MOTION TO DISMISS UNDER § 707(b) OF THE CODE**

The United States Trustee has moved to dismiss this case, claiming it is presumed to be abusive of chapter 7 under 11 U.S.C. § 707(b) because the "means test" shows that the Debtors, Randy and Kristi Hanks, have disposable income above the statutory thresholds. The Debtors admit the presumption of abuse arises in this case, but claim it is rebutted by "special circumstances" requiring an adjustment to the expenses and income reflected in their means test calculation. The Trustee disagrees, focusing on the fact that the Debtors make nearly $160,000 per year, and arguing that the Debtors' adjustments are not "special circumstances." Given the parties' positions, the Court is tasked with determining whether the adjustments claimed by the Debtors rise to the level of "special circumstances" as contemplated by

1

§ 707 of the Code. The Court has considered the parties' pleadings and evidence, and rules as follows.

## PRESUMPTION OF ABUSE UNDER THE BANKRUPTCY CODE

Section 707(b)(1) of the Bankruptcy Code authorizes a court to dismiss a case filed by an individual debtor "whose debts are primarily consumer debts . . . if it finds" that relief under chapter 7 "would be an abuse of the provisions of" chapter 7. 11 U.S.C. § 707(b)(1). Under § 707(b)(2), the court must "*presume* abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii) and (iv) [of subsection (b)(2)(A)][1], and multiplied by 60 is not less than the lesser of—(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $8,175, whichever is greater; or (II) $13,650." 11 U.S.C. § 707(b)(2)(A)(i) (emphasis added). This mathematical calculation is known as the "means test." If this test results in an average monthly disposable income figure that when multiplied by 60 exceeds the threshold provided in § 707(b)(2)(A)(i)(II)—$13,650—the bankruptcy case is presumptively abusive.

The presumption of abuse may be rebutted by showing that special circumstances exist. 11 U.S.C. § 707(b)(2)(B)(i). The statute does not define "special circumstances," but it provides two examples: (1) a serious medical condition, or (2) a call or order to active duty in the Armed Forces. "Special circumstances" are not limited to these two examples. 6 *Collier on Bankruptcy* ¶ 707.04[3][d] (Richard Levin & Henry J. Sommer eds. 16th eds., 2009 & Supp. 2020). The statute sets forth the procedural and substantive requirements a debtor must follow to establish special circumstances:

---

[1] The reductions allowed to a debtor's current monthly income under clauses (ii), (iii) and (iv) of § 707(b)(2)(A) include: "the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . ."; "the debtor's average monthly payments on account of secured debts" calculated as provided by the statute; and "the debtor's expenses for payment of priority claims. . ." *See* 11 U.S.C. § 707(b)(2)(A)(ii), (iii) and (iv).

2

> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide—
>
>> (I) documentation for such expense or adjustment of income; and
>>
>> (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
>
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

11 U.S.C. § 707(b)(2)(B)(ii) and (iii). The "debtor bears the burden of proof under both the procedural and substantive factors[.]" *In re Martin*, 505 B.R. 517, 521 (Bankr. S.D. Iowa 2014); *In re Orlando*, 2018 WL 3637231 at *1, *6 (Bankr. D. Mass. July 30, 2018) (citing *Martin*); *see also In re Pageau*, 383 B.R. 221, 225 (Bankr. D.N.H. 2008).

Two Official Bankruptcy Forms have been developed to aid debtors in completing the means test calculation. The first is Form 122A-1, entitled "Chapter 7 Statement of Your Current Monthly Income," which is used to determine whether a debtor's annual income is above his or her state's median income. If above median, the debtor must complete the means test, and Form 122A-2, aptly entitled, "Chapter 7 Means Test," is used for completing that test.[2] If this test shows that the debtor's "monthly disposable income," when multiplied by 60, is above the statutory thresholds in § 707(b)(2)(A)(i)(I) or (II), then there is a presumption of abuse. To rebut the presumption, Form 122A-2 also contains a section for the debtor to disclose any special circumstances that may justify the allowance of additional expense deductions or adjustments to income. The Form instructs debtors to provide an itemization of all adjustments, and it advises debtors to provide all documentation in support of the adjustments to the trustee.

---

[2] Not all chapter 7 debtors are subject to the means test and the presumption of abuse. Only those debtors whose annual income exceeds their state's median income for their household size are subject to having their eligibility to file chapter 7 determined by the means test. *See* 11 U.S.C. § 707(b)(7).

3

## BACKGROUND

The Debtors' Form 122A-1 was filed with their schedules on August 30, 2019, and it shows that Mr. Hanks is employed as a registered nurse making $13,244.72 per month, or $158,936.64 annually.[3] This Form also shows that the Debtors have a household of five, and that the median income in Louisiana for a household of that size is $87,489. Since the Debtors' annual income is nearly double the median, they were required to complete the means test, using Form 122A-2.

The means test shows that after giving effect to the allowed reductions to the Debtors' income, they have $405.46 in monthly disposable income, or $24,327.60 when that figure is multiplied by 60. Since this amount is greater than the statutory threshold in 11 U.S.C. § 707(b)(2)(A)(i)(II) of $13,650, the presumption of abuse arises, which the Debtors' admit.[4] However, the Debtors set forth three "special circumstances" on Form 122A-2 that they claim rebut the presumption of abuse: student loan debt totaling $125,475, voluntary 401(k) payments of $929.50 per month, and excess vehicle expenses of $185.00 per month.

On October 28, 2019, the United States Trustee filed a Statement of Presumed Abuse. Since the Debtors did not dismiss their case or move to convert it to a Chapter 13 case in response to this Statement, the Trustee moved to dismiss the Debtors' case, arguing that the nondischargeability of the Debtors' student loan debt does not make it a special circumstance. The Trustee also argues that the voluntary 401(k) contributions and vehicle expenses are not "special circumstances" as contemplated by the Bankruptcy Code. Additionally, the Trustee noted that "several of the Debtors' ordinary means test deductions may be inflated," including the deductions of $210 per month for educational expenses, $283 per month in optional telephone expenses, and $457 per month in additional health care expenses. (ECF #15).

---

[3] *See* ECF # 1, Official Form 122A-1, Chapter 7 Statement of Your Current Monthly Income. Ms. Hanks is not employed.
[4] *Id.*, Official Form 122A-2, Chapter 7 Means Test Calculation. The Debtors "checked" the box indicating the presumption arises in this case.

The Debtors objected to the Trustee's Motion, reiterating the alleged special circumstances set forth in Form 122A-2, and alleging two additional items that the Debtors contend are special circumstances: orthodontic work for their children and dental procedures needed by the codebtor for an implant and removal of impacted wisdom teeth. (ECF # 20). The Debtors objection also provided more information with respect to the additional health care expenses disclosed in the means test, noting that the "information in the means test as to medical includes the estimated monthly payment [for the orthodontist] but does not include the handling of the down payment" of $1,400. The Debtors also contend "that their Schedule I [income] and the actual necessary expenses as reflected on Schedule 'J,' do not allow for them to fund a Chapter 13 Plan[.]" *Id*.

Both the Trustee and the Debtors filed supplemental briefs just prior to the hearing. The Trustee's brief (ECF #21) provides more details in support of his claim that the Debtors have understated their income and have overstated some of the means test expenses. The Trustee contends the Debtors' income is understated because they did not disclose reimbursements they received from Mr. Hank's employer for cell phone usage. The Trustee also claims the telephone and education means test expenses are inflated, causing an understatement of monthly disposable income. After adjusting for these matters, the Trustee contends the Debtors' actual monthly disposable income is $967.97 per month, or $58,078.20 over a five-year period, not $405.56 per month and $24,327.60 over five years, as reported by the Debtors in Form 122A-2. The Trustee also reiterated his position that none of the adjustments requested by the Debtors rise to the level of "special circumstances" under prevailing jurisprudence.

The Debtor's supplemental brief (ECF #23) again reiterates the items they claim are "special circumstances." They also assert, for the first time, that their income has decreased since the Chapter 7 case was filed, because Mr. Hanks is no longer working overtime hours, which he voluntarily reduced so he could work on "clinicals" to become a nurse practitioner. Thus, the Debtors contend their current income, when annualized, will be approximately $141,108.36, which is nearly $20,000

5

less than they were making when the case was filed. The Debtors contend that the combination of the decreased income and their other special circumstances make it difficult for them to pay their regular monthly expenses, and they contend there is no money remaining on a monthly basis for them to fund a Chapter 13 plan.

The hearing on the Trustee's motion primarily focused on the arguments set forth by the parties in their briefing. The Debtors did not testify; nor did they submit an affidavit or sworn statement in support of any of their claims. However, without objection from the Trustee, they submitted documentary evidence in support of some of their claimed special circumstances, which will be discussed below.

The Court must determine whether the Debtors' student loan debt, voluntary 401(k) contributions, alleged excess vehicle expenses, orthodontist/dental costs, and the claimed reduction in income amount to special circumstances under § 707(b)(2)(B)(i) of the Code. Additionally, the Court must determine whether an anticipated zero or low dividend to be paid to unsecured creditors assuming this case proceeded under Chapter 13 qualifies as a special circumstance.

## ANALYSIS

### The nondischargeable nature of student loan debt does not make it *per se* a special circumstance.

The Debtors' student loan debt totals $125,475, and they are not currently required to make payments on these loans. The Debtors contend the student loans are a special circumstance because they are nondischargeable, although they offer no legal support for this assertion. The Trustee, on the other hand, contends that many courts have concluded that student loans are not special circumstances simply because they are nondischargeable, although he admits that some courts have held otherwise. There is no controlling authority on this issue in the Fifth Circuit.

Courts are indeed split on whether student loans are *per se* "special circumstances" under § 707(b)(2)(B)(i). Courts finding that they are focus primarily on the nondischargeable nature of the debt, finding that a debtor has no realistic option other than to pay them during the bankruptcy case. *See In re Martin,* 371 B.R.

6

347 (Bankr. C.D. Ill. 2007) (holding that a chapter 13 filing would only result in partial payment of the student loan debt and the debtors had no reasonable alternative but to pay the debt); *In re Haman,* 366 B.R. 307 (Bankr. D. Del. 2007) (same); *In re Templeton,* 365 B.R. 213 (Bankr. W.D. Okla. 2007) (same); *In re Delbecq,* 368 B.R. 754 (Bankr. S.D. Ind. 2007) (finding special circumstances were established, in part, by the fact that the debtor's student loans were nondischargeable); *In re Knight,* 370 B.R. 429, 441(Bankr. N.D. Ga. 2007) (same).

Other courts have rejected the notion that the nondischargeable nature of student loans makes them *per se* special circumstances, finding that if "non-dischargeability was the standard for a special circumstance, Congress would have said so." *In re Lightsey*, 374 B.R. 377, 381 n.3 (Bankr. S.D. Ga. 2007); *see also In re Martin*, 505 B.R. at 522 ("The Debtors' mere allegation that their loans are more substantial than other individuals filing for bankruptcy and that these obligations are non-dischargeable do not satisfy the requirements of 11 U.S.C. § 707(b)(2)(B)(i) and are insufficient to conclude that special circumstances exist."); *In re Brown*, 500 B.R. 255, 262 (Bankr. S.D. Ga. 2013) ("[The Court] reject[s] the notion that just because a student loan debt is non-dischargeable makes it a 'special circumstance.'"); *In re Harmon*, 446 B.R. 721, 729-30 (Bankr. E.D. Pa. 2011) (concluding that the mere fact that Chapter 7 debtor's student loan debt was not dischargeable, and that the debtor might have no alternative but to eventually repay it, did not, standing alone, make it a special circumstance); *In re Siler,* 426 B.R. 167, 174 (Bankr. W.D.N.C. 2010) (same); *In re Carrillo*, 421 B.R. 540, 544-45 (Bankr. D. Ariz. 2009) (same); *In re Vaccariello*, 375 B.R. 809 (Bankr. N.D. Ohio 2007) (same); *In re Pageau*, 383 B.R. at 228 (same); *In re Orlando*, 2018 WL 3637231, at *6 (same).

Courts have also noted that if nondischargeability alone creates a special circumstance, then any nondischargeable debt could be a special circumstance:

> Those courts concluding that "special circumstances" include non-dischargeable student loan obligations arguably will have to apply this standard to every other non-dischargeable obligation, . . . [including] debts arising not only from student loans but also from fraud, embezzlement, DUI, and the like. *See* 11 U.S.C. §§ 523 and

7

> 1328(a). Every one of these non-dischargeable obligations could qualify as debts for which a debtor has no reasonable alternative but to continue payments to avoid economic harm, and there is no suggestion in Section 707(b)(2)(B) that courts have been delegated the policy decision of deciding that some non-dischargeable debts are "good" and some are "bad" so as to permit treating some but not all as a "special circumstance."

*In re Lightsey*, 374 B.R. at 381 n.3; *In re Martin*, 505 B.R. at 521-22 (quoting *Lightsey*); *see also In re Wagner*, 2008 WL 706616, at *2. (Bankr. D. Neb. March 14, 2008).

Although most courts have rejected the *per se* classification of student loans as "special circumstances," even among those courts there is disagreement as to the circumstances that may elevate student loan debt to that category. Some courts focus on the circumstances that caused the debtor to incur the student loans. These courts have observed that the examples of "special circumstances" in § 707(b)(2)(B)(i)—a serious medical condition or call to active duty in the military—"do not identify expenses, but rather identify some circumstances that give rise to such expenses." *In re Pageau*, 383 B.R. at 228. Based on these two examples, these courts find that a debtor's claimed "special circumstances" must "show a commonality" with these two examples; that is they must "not only put a strain on a debtor's household budget, but they [must] arise from circumstances normally beyond the Debtor's control." *In re Castle*, 362 B.R. 846, 851 (Bankr. N.D. Ohio 2006); *In re Pageau*, 383 B.R. at 228; *see also United States v. Brown*, 536 F.2d 117, 121 (6th Cir. 1976) ("[U]nless a statute otherwise indicates, where a listing of particular or specific objects is followed by general words to indicate that the list is incomplete, the general words will not be construed broadly, but will be limited to include only objects of the same kind or class specifically enumerated.").

Courts applying this narrow interpretation of "special circumstances" have concluded that student loans can only be classified as special circumstances if they were incurred under "circumstances beyond a debtor's control or at least extraordinary or exceptional for which there is no reasonable alternative." *In re Brown*, 500 B.R. at 262; *see also, In re Fudge*, 2016 WL 285449, at *2 (Bankr. E.D.

Mich. Jan. 22, 2016) ("[T]he critical inquiry is whether an event outside of the debtor's control necessitated the decision to incur the loans in the first place."). Put another way, "[a] debtor asserting 'special circumstances' in support of additional expenses or income adjustment must establish the circumstances are extraordinary or exceptional, are unexpected or involuntary, and place the debtor in dire need of Chapter 7 relief." *In re Stocker*, 399 B.R. 522, 532 (Bankr. M.D. Fla. 2008); *In re Martin*, 505 B.R. at 521 (quoting *Stocker*).

Examples of circumstances that may result in student loans being classified as special circumstances under this narrow interpretation include "[e]ducational loans incurred in pursuit of education and training that is necessitated by permanent injury, disability or an employer closing, . . . because such events are outside the control of a debtor as are the two examples in the statute." *In re Pageau*, 383 B.R. at 228. Conversely, "student loans . . . incurred solely to secure a more advantageous income or to enter a different vocation, are not special circumstances." *Id.*; *see also In re Siler*, 426 B.R. 167, 175 ("[S]tudent loans . . . incurred in the ordinary pursuit of a career . . . are not unique and they do not enjoy statutory priority over other creditor claims. They will rarely, if ever, qualify as special circumstances."); *see also In re Carillo*, 421 B.R. 540, 544 (Bankr. D. Ariz. 2009) ("These courts focus on the reasons the debtor incurred the debt, noting that there is rarely anything special about the incurrence of student loans, which have become ubiquitous."); *In re Orlando*, 2018 WL 3637231, at *6.

Other courts have taken a more expansive approach, focusing on "whether the debtor has a 'meaningful ability' to pay his or her debts in light of an additional expense . . . not otherwise reflected in a means test calculation." *In re Delbecq*, 368 B.R. at 758-59 (citing *In re Lenton*, 358 B.R. 651 (Bankr. E.D. Pa. 2006); *In re Thompson*, 350 B.R. 770 (Bankr. N.D. Ohio 2006)); *In re Knight*, 370 at 437 (quoting *Delbecq*). These courts focus on "the future [to] assess the likely consequences for the debtor if the student loan payment is not treated as a 'special circumstance.'" *In re Harmon*, 446 B.R. at 729; *In re Orlando,* 2018 WL 3637231, at *6 (quoting *Harmon*); *see also In re Howell*, 477 B.R. 314 (Bankr. W.D.N.Y. 2012) (noting that "after

9

completing any likely plan under Chapter 13, the debtors would owe more on their student loans than if they had continued to make their regular contractual payments during the same period of time"); *In re Sanders*, 454 B.R. 855, 861-62 (Bankr. M.D. Ala. 2011) (classifying the debtors' student loans as a special circumstance because (i) public policy encourages people to obtain higher education degrees, although few can afford them outright, and (ii) forcing debtors to defer payments or extend the length of the loan under a Chapter 13 plan would require the debtors to incur even more student loan debt, an outcome the court did not find to be a reasonable alternative to a chapter 7 proceeding); *In re Bradley*, 2013 WL 4663125, at *4 (Bankr. S.D. Ala. Aug. 30, 2013) (student loan payment was considered a special circumstance when the debtors lived modestly, had no meaningful ability to pay their debts, and "a chapter 13 case would force [them] to incur even more nondischargeable student loan debt").

Turning to this case, after giving due consideration to the various approaches being employed by other courts to determine whether student loans are special circumstances, this Court rejects the Debtors' argument that the nondischargeability of student loans, standing alone, makes them *per se* "special circumstances." If nondischargeability were the test for special circumstances, then this factor alone would swallow the entire rule in most student loan cases. *See In re Orlando*, 2018 WL 3637231, at *7 (declining to adopt a *per se* rule that student loans are by their nature special circumstances "because what should be an exception to the normal means expense calculation in the means test would arguably swallow the entire rule in many student loan cases"). Moreover, given the common nature of student loans, had Congress intended them to be a *per se* special circumstance, it certainly could have said so.

Perhaps the Debtors may have been able to satisfy one of the other tests for determining whether student loans are special circumstances, but they have failed to meet their burden under the other tests. For example, there is no evidence showing that a permanent injury, disability or an employer closing led to the Debtors incurring the student loans to pursue a different vocation. Indeed, all indications are

10

that Mr. Hanks incurred these debts pursuing his current career as a registered nurse, and in furthering his education to become a nurse practitioner. Nor is there any evidence showing that this debt will cause dire circumstances for the Debtors in the future. The opposite appears to be true, as the Debtors were already making nearly $160,000 with Mr. Hanks working as a registered nurse, and it is likely he will be making more as a nurse practitioner.

Simply put, the Debtors have not met their burden of showing their student loans are special circumstances.

### **401(k) Contributions are not special circumstances.**

The Debtors claim their *voluntary* monthly 401(k) contribution of $929.50 is a special circumstance. They contend that because retirement plan contributions may not be disposable income in a Chapter 13 case, they are not available to fund a Chapter 13 plan, and thus should be deducted from their income in the means test. Again, they have not identified a single case in which the court allowed a voluntary contribution to a retirement plan to satisfy the special circumstances requirement.

The Debtors' failure to cite any authority supporting their position is not surprising, because "[n]o reported decision has ever held a Chapter 7 debtor's voluntary contribution to his or her retirement plan to be a special circumstance." *In re Siler*, 426 B.R at 173. This is because there is a reasonable alternative to this expense, as the debtor can simply stop the voluntary contributions:

> [D]ebtor's contribution to his [401(k)/Thrift Savings Plan] is not a special circumstance. Debtor's contribution to his TSP is an entirely voluntary action, the antithesis of an expense for which there is no reasonable alternative. Other courts have similarly held. *In re Robinette,* 2007 WL 2955960 (Bankr. D.N.M. October 2, 2007) (finding 401k contribution not a special circumstance because it was non-mandatory, not reasonable or necessary, and expense for which debtors had alternative); *In re Johns,* 342 B.R. 626, 629 (Bankr. E.D. Okla. 2006) (rejecting debtors' argument that zero payment to unsecureds in a chapter 13 resulting from among other things, debtors' ability to deduct 401k contributions in a chapter 13, was a special circumstance).

*In re Tauter*, 402 B.R. 903, 906-07 (Bankr. M.D. Fla. 2009).

The Court agrees with the foregoing cases and concludes that voluntary contributions to a retirement plan do not fall into the category of special circumstances.

### **The Debtors have not carried their burden to prove excess vehicle expenses.**

The Debtors own two vehicles, a 2015 Chevrolet Sonic and a 2017 Honda Pilot, and they are currently making monthly payments on both. The Debtors initially claimed that they had excess vehicle expenses of $185 per month, but at the hearing, they claimed their actual excess monthly vehicle expenses are $193.39. The Debtors claim to have vehicle expenses over and above their monthly car payments of $878.03 per month, which is comprised of $500 per month for "fuel, maintenance and repairs" and $378.03 per month for vehicle insurance. *See* Ex. 9 (ECF #24-1). On the other hand, the Debtors' means test calculation, which is based on IRS expense standards, shows a monthly vehicle expense allowance of $684.64 over and above the Debtors' monthly payments on the two vehicles. *See* Official Form 122A-2, Chapter 7 Means Test Calculation (ECF #1). The difference is $193.39, which is the amount of the excess vehicle expense the Debtors are claiming.

The Trustee acknowledges that the Debtors have documented the actual amount of their vehicle insurance expenses of $378.03, but he claims the debtors have not provided any documentation to show that they spend $500 per month for fuel, maintenance and repairs. Generally, when a debtor claims expenses in excess of those allowed by the IRS standards, he or she is required to provide reasonable documentation of the excess charges. *See In re Sparks*, 360 B.R. 224, 230 (Bankr. E.D. Tex. 2006) (disallowing excess vehicle expenses as a special circumstance where the expenses had not been fully documented and observing that the "exception to the parameters of acceptable expenses must be strictly construed to allow only those expenses which are truly unavoidable to the debtor").

The Court finds that the Debtors have not established, through documentary evidence or otherwise, that they incur vehicle expenses in excess of those allowed

12

19-20617 - #25 File 07/20/20 Enter 07/20/20 16:55:20 Main Document Pg 12 of 19

under their means test, and on this basis alone, the Court will reject their claim. Moreover, based on the limited documentation the Debtors have submitted to the Court with regards to vehicle expenses,[5] it appears the Debtors' actual vehicle expenses are certainly less than the amount they are claiming, and less than those allowed under the means test, not more.

This conclusion is based on the following. First, as noted, the Debtors have submitted documentation indicating that they pay $378.03 per month for vehicle insurance. Subtracting the insurance expenses from the means test vehicle expenses leaves $306.31 per month, or approximately $3,679.32 per year under the means test for the Debtors to pay for fuel, maintenance and repairs on the vehicles. Thus, the Debtors need to spend more than $306.31 per month for fuel, maintenance and repairs to prove they have excess vehicle expenses. As noted, they claim that they spend $500 per month for these matters, but based on the limited documentation provided by the Debtors, it appears their actual monthly expenses for fuel, maintenance and repairs are not only less than $500 per month, but also less than $306.31 per month, as explained below.

With respect to fuel costs, the Debtors submitted documentation showing the Honda Pilot gets approximately 22 miles per gallon and the Sonic gets 30 miles per gallon. *See* Exhibit #9, pp. 2-3 (ECF #24-1). The Debtors have not provided any documentation of the actual miles each of these vehicles is driven per year, or reasonable fuel costs. Thus, the Court will assume each is driven the national average of 15,000 miles per year, and that fuel costs $2.25 per gallon (which is generous based on current market conditions). Based on these assumptions, the Court estimates that the Debtors spend $2,596.16 per year, or $216.35 per month on fuel.[6]

---

[5] *See* Exhibit 9 (ECF #24-1).
[6] The fuel costs are calculated as follows. First, assuming the Pilot is driven 15,000 miles per year and averages 22 miles per gallon, and the Sonic is driven 15,000 miles per year and averages 30 miles per gallon, the average miles per gallon for both vehicles is 26. This amount is then divided into 30,000 (the total miles both vehicles are driven per year), which is 1,153.85, which is the actual gallons used by the debtors each year based on the Court's assumptions. This amount is then multiplied by $2.25, which is the estimated average costs for each gallon of gas, giving the product of $2,596.16, which is the Debtors' annual fuel costs, which equates to $216.35 per month.

13

Although the Debtors did not submit any documentation with respect to what they spend to maintain each vehicle per year, the Court will assume that each vehicle's oil is changed twice a year at $60 per oil change, which equates to $240 per year or $20 per month. As to repairs, the Debtors' Honda Pilot appears to be within the new car warranty period, and thus unlikely to have any unexpected repair costs. The Debtors have submitted documentation for the costs of a new timing chain for the Chevrolet Sonic, which is estimated to be approximately $480, or another $40 per month. *See* Exhibit # 9, p. 4 (ECF #24-1).

After taking all the foregoing into account, the Debtors total estimated vehicle expenses for fuel, maintenance and repairs is $276.35 per month, which is nowhere near the $500 per month they claim, and is also less than the $306.31 per month the Debtors have under the means test calculation for these expenses. Thus, it does not appear the Debtors have excess vehicle expenses.

In sum, the Debtors have not met their burden of showing that they have excess vehicle expenses, and there is not a shred of evidence showing that their vehicle expenses fit the definition of special circumstances.

**The Debtors' orthodontic/dental expenses are not special circumstances.**

"Serious medical issues" is one of the delineated examples of circumstances that may rise to the level of "special circumstances" under § 707(b)(2)(B)(i) of the Code. At the time of filing their case, the Debtors did not claim that they had any medical or dental costs for "serious medical issues" that may qualify as special circumstances. However, in response to the Trustee's Motion to Dismiss, the Debtors raised the costs of their children's braces, and costs to be incurred by Ms. Hanks for the extraction of her wisdom teeth, repairing a broken tooth, and two implants (collectively, "Ms. Hanks' dental work"), as special circumstances.

At the hearing the Debtors submitted a spreadsheet and supporting documentation showing that they have monthly medical expenses, including the costs for their children's braces, of $791.14. *See* Exhibit 11 (ECF #24-3). Included in this amount is the cost of monthly doctor's visits by Mr. Hanks of $75, certain over the

14

counter medications in the amount of $48.89 per month, and prescription drug costs of $130.59 per month. *Id.* This evidence also shows that the costs for Ms. Hanks' dental work are estimated to be $7,215. *Id.* The Debtors did not provide any explanations as to why these costs are special circumstances. Nor did they cite any cases in which a court has classified children's braces or the extraction of wisdom teeth and dental implants as a "serious medical issue" and thus a "special circumstance" under § 707(b)(2)(B)(i).

Courts sometimes find "special circumstances" that justify additional means test expenses where disorders, illnesses or disabilities render the person needing support unable to work or that require a debtor to pay expenses for medical treatment. *See, e.g.*, *In re Chabre*, 531 B.R. 875, 879 (Bankr. M.D. Fla. 2015) (allowing the debtor's additional expenses as special circumstances where the debtor supported relatives with "chronically poor health" and "disabilities that prevent their employment"); *In re Davis*, 2011 WL 5884015, at *7 (Bankr. N.D. Tex. Nov. 23, 2011) (allowing the debtors' $300 savings expense as a special circumstance for the wife's treatment for malignant melanoma); *In re Edwards*, 2010 WL 1006890, at *1–2 (Bankr. E.D.N.C. March 17, 2010) (allowing a debtor's additional expenses as special circumstances where she suffered a severe stroke rendering her "totally disabled" and "unable to live without constant medical care").

Conversely, courts have not found special circumstances for medical expenses if there is no showing those expenses have impacted the debtor's ability to work. *See In re Oliver*, 350 B.R. 294, 303 (Bankr. W.D. Tex. 2006) (not allowing the debtor's medical expenses for his diagnosed depression, anxiety and bipolar disorder as special circumstances in part because the debtor "maintained steady employment over the last 15 years that he has suffered these conditions"); *In re Nguyen*, 2016 WL 3598322, at *7 (Bankr. D. Kan. June 27, 2016) (not allowing debtor's medical expenses because he failed to prove his condition either generated substantial expenses that were not accounted for under the means test, or which significantly impaired his ability to earn a high income).

The Court finds that the Debtors have not shown that their medical expenses are special circumstances. First, children's braces and Ms. Hanks' dental work, are not uncommon or unusual occurrences. Indeed, many families are faced with costs for braces and other dental costs, and this Court is not aware of a single case in which a court has found such common expenses to be special circumstances. Second, most of the Debtors' medical expenses depicted in Exhibit 11 (ECF #24-3), except for the costs for Ms. Hanks' dental work, are already factored into the Debtors means test. *See* Official Form 122A-2, Chapter 7 Means Test Calculation, Lines 7 and 22 (ECF #1).

Third, with respect to Ms. Hanks' dental work, the evidence before the Court shows that the Debtors have both medical and dental insurance, yet the Debtors have not disclosed whether any of the estimated $7,215 for her dental work will be covered by insurance. Typically, costs associated with oral surgery for the removal of wisdom teeth are covered by medical insurance. Also, dental insurance will often defray part of the costs for the repair of broken teeth, implants and related crowns. Thus, notwithstanding the lack of any evidence showing these costs are special circumstances, the Court cannot determine with certainty what amounts of these estimated costs the Debtors may ultimately bear.

Finally, none of the dental costs represent recurring expenses to be incurred over many years, which is often the case for serious medical expenses to rise to special circumstances. Rather, these appear to be routine matters which are neither special nor uncommon. For all these reasons, the Court finds the Debtors' costs for their children's braces and Ms. Hanks dental work are not special circumstances.

**<u>A voluntary reduction in overtime hours is not a special circumstance.</u>**

At the time the Debtors filed their means test showing a presumption of abuse, they did not disclose that Mr. Hanks' income would be reduced going forward, much less claim that such a reduction qualified as a special circumstance. It was not until they filed their supplemental brief, the day before the hearing on this matter and six months after filing this case, that they claimed a special circumstance for Mr. Hanks alleged reduction in income.

The Debtors claim in their supplemental brief a substantial amount of Mr. Hanks income prior to the filing of this case was attributable to overtime hours, as he generally worked 60 hours or more per week, and always at least 50 hours per week. But now the Debtors claim Mr. Hanks' hours do not exceed 50 hours per week because he is working on "clinicals" as part of his nurse practitioner's degree program. The only evidence before the Court with respect to this issue is a spreadsheet prepared by the Debtor (Ex. 2) showing his reduction in income as shown in paystubs for the month of November 2019 and part of 2020 (Ex. 12 (ECF #24-4)), and a pro forma means test based on Mr. Hanks' reduced income, which shows the Debtors monthly income to be $11,759.03 per month rather than $13,325.63 as shown in the original means test (Ex. 3).

In opposition, the Trustee points out that Mr. Hanks' reduction in income is likely temporary because once he is certified as a nurse practitioner, his income will increase presumably to an amount above the already high level of income he makes as a nurse practitioner. Moreover, the Trustee points out that even at the reduced level, Mr. Hanks' income is still approximately $141,108.36, which is well above the median income for a family of five of $87,849.

Again, the Court has limited evidence before it on this issue. Certainly, if Mr. Hanks faced the prospect of permanently reduced income due to no fault of his own, and the evidence showed there was no reasonable alternative to this reduction, then the Court may be more inclined to find a special circumstance. However, there is no evidence touching on the length of time Mr. Hanks will be in "clinicals" and the prospects for his earnings once he completes his degree. Moreover, it appears the Debtors anticipate that Mr. Hanks's completing the requirements for being a nurse practitioner will "better his chances for increased income in the future." *See* Debtor's Objection to United States Trustee's Motion to Dismiss, p. 2 (ECF #20). Even if Mr. Hanks' income does not increase as a nurse practitioner, there is no evidence indicating that he would be unable to keep his current position and the overtime to which he was accustomed. Given the lack of evidence on these issues, the Court finds

the Debtors have not carried their burden of proving that a voluntary and temporary reduction in income is a special circumstance.

The Court in *In re Parulan*, 387 B.R. 168 (Bankr. E.D. Va. 2008) reached a similar conclusion. There, the debtor claimed that his reduction in income due to the loss of overtime hours was a special circumstance. The Court rejected the Debtor's claim, based in part on the lack of evidence showing that the reduction was permanent or for which there was no reasonable alternative:

> Even putting aside the procedural problems already noted, the limited evidence before the court fails to establish that the reduction in available overtime is likely to be permanent, let alone that it is "uncommon," "unusual," or "exceptional." By its very nature, overtime tends to fluctuate. Additionally, the debtor did not provide any evidence to show that there was no reasonable alternative (such as taking on a second job) to mitigate any loss of take-home pay resulting from a reduction or elimination of overtime. For that reason, the court cannot find that the debtor has sufficiently demonstrated "special circumstances" within the meaning of § 707(b)(2)(B) that would justify an adjustment to current monthly income.

*Id.* at 173 (applying the same standard at issue here, but in a Chapter 13 case).

Similarly, the Court finds that the Debtors here have not sufficiently demonstrated special circumstances to justify an adjustment to their means test income for determining whether the presumption of abuse has been rebutted.

**A small or zero dividend to unsecured creditors in Chapter 13 is not a special circumstance.**

Notwithstanding the Debtors' contentions that each of the items examined to this point may individually represent a "special circumstance," the Debtors' primary argument is that they should not be forced into a Chapter 13 case because unsecured creditors would receive little if any dividend if this case proceeded under that Chapter. Specifically, the Debtors claim that their income and expenses "do not allow for them to fund a Chapter 13 Plan and that the Motion to Dismiss for 'abuse' should be denied." *See* Debtor's Objection to United States Trustee's Motion to Dismiss, p. 2

(ECF #20); *see also* Debtor's Response to United States Trustee's Support Memorandum, p. 5 (ECF #23).

The Court disagrees. Under a plain reading of § 707(b)(2)(B)(iv), a potential dividend in a Chapter 13 case is unable to serve as a circumstance to rebut the presumption of abuse. *In re Alther*, 537 B.R. 262, 270 (Bankr. W.D. Va. 2015); *see also In re Smith*, 388 B.R. 885, 888-89 (Bankr. C.D. Ill. 2008) (lack of a meaningful payback in Chapter 13 is not a defense to dismissal); *In re Johns*, 342 B.R. 626, 629 (Bankr. E.D. Okla. 2006) (the potential payback of zero percent dividend in Chapter 13 is not a special circumstance to rebut the presumption of abuse); *In re Castle*, 362 B.R. at 852 (debtors' inability to fund a Chapter 13 plan is not an exception to the means test). To rebut the presumption of abuse, § 707 requires a debtor to show circumstances which lead to an adjustment in the current monthly income that when multiplied by 60 produces a figure below the statutory threshold. The potential dividend to unsecured creditors to be paid pursuant to a Chapter 13 plan has no effect on the amount of a debtor's current income, and thus does not serve as a basis to overcome the presumption of abuse under the Code.

## CONCLUSION

The Court finds that the Debtors have not met their burden of establishing the existence of any "special circumstances," and thus they have not overcome the presumption of abuse in this case under § 707(b)(2) of the Code. Accordingly, this case will be dismissed. Given this ruling, the Court will not consider the Trustee's alternate grounds for dismissal under § 707(b)(3) of the Code. Nor will the Court consider the Trustee's assertion that the Debtors overstated several of their means test expenses.

Within 10 days of the Court signing this opinion, the Trustee shall submit an order consistent with the findings and rulings of this opinion.